**14-969-cv**
*Crawford v. Cuomo, et al.*

# In the
# United States Court of Appeals
# For the Second Circuit

————

AUGUST TERM, 2014

ARGUED: FEBRUARY 24, 2015
DECIDED: AUGUST 11, 2015

No. 14-969

JAMES CRAWFORD and THADDEUS CORLEY,
*Plaintiffs-Appellants,*

*v.*

ANDREW CUOMO as Governor of the State of New York, in his official
capacity; BRIAN FISCHER, Commissioner of Department of Corrections and
Community Supervision, in his official capacity; Superintendent WILLIAM P.
BROWN, in his personal and official capacities; Superintendent WILLIAM
LARKIN, in his official capacity; Corrections Officer SIMON PRINDLE; and
JOHN DOE CORRECTIONS OFFICERS 1-8,
*Defendants-Appellees.*[1]

————

Appeal from the United States District Court
for the Northern District of New York.
No. 13 Civ. 406 – Norman A. Mordue, *Judge*.

————

---

[1] The Clerk of the Court is directed to amend the caption as set forth above.

Before: KATZMANN, *Chief Judge*, WALKER and LYNCH, *Circuit Judges*.

_____

On March 5, 2014, the district court (Norman A. Mordue, *J.*) dismissed a complaint filed by Thaddeus Corley, an inmate at the Eastern Correctional Facility ("ECF"), and James Crawford, a former ECF inmate, alleging that Corrections Officer Simon Prindle sexually abused them and, in doing so, subjected them to cruel and unusual punishment in violation of the Eighth Amendment. In dismissing the case, the district court concluded that the complaint failed to state a claim under *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997), which set forth the standard for stating an Eighth Amendment claim arising from sexual abuse in prison. Crawford and Corley appealed, arguing that the district court construed our opinion in *Boddie* too narrowly. We agree.

We write today to clarify the rule set forth in *Boddie*: A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment. Moreover, we recognize that sexual abuse of prisoners, once passively accepted by society, deeply offends today's

standards of decency. The proper application of the rule in *Boddie* must reflect these standards.

By alleging that Officer Prindle fondled their genitals for personal gratification and without penological justification, Crawford and Corley stated a cognizable Eighth Amendment claim. Accordingly, we REVERSE the district court's order dismissing the complaint and REMAND the case for further proceedings consistent with this opinion.

————

> ADAM D. PERLMUTTER, Law Offices of Adam D. Perlmutter, P.C., New York, N.Y. (Daniel A. McGuinness, Law Offices of Adam D. Perlmutter, P.C., New York, N.Y.; Zachary Margulis-Ohnuma, Law Office of Zachary Margulis-Ohnuma, New York, N.Y., *on the brief*), *for Plaintiffs-Appellants.*
>
> FRANK BRADY, Assistant Solicitor General of Counsel (Barbara D. Underwood, Solicitor General, Andrew Ayers, Assistant Solicitor General of Counsel, *on the brief*), *for* Eric T. Schneiderman, Attorney General of the State of New York, Albany, N.Y., *for Defendants-Appellees.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

On March 5, 2014, the district court (Norman A. Mordue, *J.*) dismissed a complaint filed by Thaddeus Corley, an inmate at the Eastern

Correctional Facility ("ECF"), and James Crawford, a former ECF inmate, alleging that Corrections Officer Simon Prindle sexually abused them and, in doing so, subjected them to cruel and unusual punishment in violation of the Eighth Amendment. In dismissing the case, the district court concluded that the complaint failed to state a claim under *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997), which set forth the standard for stating an Eighth Amendment claim arising from sexual abuse in prison. Crawford and Corley appealed, arguing that the district court construed our opinion in *Boddie* too narrowly. We agree.

We write today to clarify the rule set forth in *Boddie*: A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment. Moreover, we recognize that sexual abuse of prisoners, once passively accepted by society, deeply offends today's standards of decency. The proper application of the rule in *Boddie* must reflect these standards.

By alleging that Officer Prindle fondled their genitals for personal gratification and without penological justification, Crawford and Corley stated a cognizable Eighth Amendment claim.  Accordingly, we REVERSE the district court's order dismissing the complaint and REMAND the case for further proceedings consistent with this opinion.

## BACKGROUND

The following facts are taken from the complaint and must be accepted as true for the purposes of deciding this appeal.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." (internal quotation marks omitted)).

### I.   The Alleged Incidents

On March 12, 2011, Thaddeus Corley, an ECF inmate, was visiting with his wife when Corrections Officer Simon Prindle ordered him out of the visiting room and sexually abused him.  Prindle informed Corley that "he was going to make sure Mr. Corley did not have an erection," and after ordering Corley to stand against the wall with his feet spread apart, Prindle

"paused to fondle and squeeze [his] penis." App'x 9. When Corley "jumped off the wall" in response, Prindle threatened him and told him to "get back on the wall." *Id.* at 10.

Four days later, Prindle abused a second ECF inmate, James Crawford.[2] As Crawford was leaving the mess hall, Prindle stopped him and initiated a search. During the search, Prindle paused around Crawford's crotch, "grabbed" and "held" his penis and asked "what's that?" *Id.* Crawford responded: "That's my penis, man." *Id.* at 11. Prindle pushed his knee into Crawford's back, pinning him to the wall, tightened his grip around the neck of Crawford's sweatshirt, and told him to "stay on the fucking wall" if he didn't want Prindle to "ram [his] head into the concrete." *Id.* Prindle continued to "squeeze" and "fondle" the area around Crawford's penis and "roam" his hands down Crawford's thigh. *Id.* 11-12. Throughout the search, Prindle told Crawford to "[s]tay on the fucking wall" if he didn't want to "go to the box," which Crawford understood to mean that Prindle would send him to solitary confinement if he resisted the abuse. App'x 11. When Crawford told Prindle that the search was not in

---

[2] Crawford has since been released on parole.

accordance with search and frisk procedures, Prindle responded: "You don't have any rights in here. . . . I'll run my hands up the crack of your ass if I want to." *Id.* at 12. As a result of these incidents, Crawford and Corley allege that they have suffered psychologically and sought help from mental health professionals.

The complaint also alleged that at least 20 inmate grievances complained of sexual abuse or harassment by Prindle. On certain occasions, Prindle demeaned Crawford and other inmates by telling them that he had "seen a little boy like [them] before on the internet" or that he had seen their penises. *Id.* at 14. And on other occasions, Prindle claimed that inmates were not properly complying with anal-cavity search procedures and ordered the inmates to repeatedly bend over and spread their buttocks for him.

## II.    Procedural History

On April 12, 2013, Crawford and Corley filed a complaint in the United States District Court for the Northern District of New York alleging that Prindle's sexual abuse violated their Eighth Amendment right to be free from cruel and unusual punishment. In addition to Prindle, the

complaint named as defendants Superintendent William P. Brown, Prindle's supervisor, as well as others.[3]  The complaint alleged that Brown, who failed to take action against Prindle despite receiving more than 20 inmate grievances alleging similar abuse, either intentionally allowed Prindle to sexually abuse inmates as a means of controlling them or was deliberately indifferent to Prindle's abusive conduct.  Crawford and Corley sought monetary damages and an injunction prohibiting Prindle from having contact with inmates.

Defendants filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  In support of the motion, Defendants cited our opinion in *Boddie v. Schnieder*, 105 F.3d 857 (2d Cir. 1997), which set forth the standard for stating an Eighth Amendment claim arising from sexual abuse in prison.  Based on its understanding of *Boddie*, the district court dismissed the Eighth Amendment cause of action for failing to state a claim and dismissed the state law claims for lack of jurisdiction.  Crawford and Corley timely appealed.

---

[3] The complaint named as defendants in their official capacities Governor Andrew Cuomo; Brian Discher, the Commissioner of the State of New York Department of Corrections and Community Supervision; Superintendent William Larkin, the current superintendent of ECF; and John Does 1-8, corrections officers who were present when Prindle committed the sexual abuse and did not intervene.

## DISCUSSION

We review *de novo* a district court's decision to dismiss a complaint pursuant to Rule 12(b)(6), accepting all factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). To survive a 12(b)(6) motion, the complaint must contain factual allegations that plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Crawford and Corley argue that, in dismissing the complaint for failing to stating an Eighth Amendment claim, the district court erred because it too narrowly construed the standard established in *Boddie*. We agree. *Boddie* recognized that a single act of sexual abuse may violate the Eighth Amendment if, as in this case, it is entirely gratuitous and devoid of penological purpose. Moreover, in the nearly two decades since *Boddie* was decided, societal standards of decency regarding sexual abuse and its harmful consequences have evolved. Without suggesting that *Boddie* was wrongly decided in 1997, we conclude that the result in that case would likely be different applying the same rule today.

I.    **Eighth Amendment Claims**

The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). To state an Eighth Amendment claim, a prisoner must allege two elements, one subjective and one objective.   First, the prisoner must allege that the defendant acted with a subjectively "sufficiently culpable state of mind." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (internal quotation marks omitted). Second, he must allege that the conduct was objectively "harmful enough" or "sufficiently serious" to reach constitutional dimensions.  *Id.* at 8, 20. Analysis of the objective prong is "context specific," *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (internal quotation marks omitted), and "depends upon the claim at issue," *Hudson*, 503 U.S. at 8.   Although not "every malevolent touch by a prison guard gives rise to a federal cause of action," the Eighth Amendment is offended by conduct that is "repugnant to the conscience of mankind."   *Id*. at 9-10 (internal quotation marks omitted).  Actions are repugnant to the conscience of mankind if they are "incompatible with evolving standards of decency" or involve "the

unnecessary and wanton infliction of pain." *Id.* at 10 (quoting *Estelle v. Gamble,* 429 U.S. 97, 102-03 (1976)).

### a. *Boddie*

In *Boddie*, we left no doubt that sexual abuse by a corrections officer can give rise to an Eighth Amendment claim. 105 F.3d at 859. With respect to the Eighth Amendment's objective component, *Boddie* made clear that "severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation."[4] *Id.* at 861. We held, however, that Boddie failed to state an Eighth Amendment claim after a female corrections officer made a pass at an him, squeezed his hand, touched his penis, called him a "sexy black devil," and bumped into him "with her whole body vagina against penis." *See id*. at 859-60. We concluded that no single incident was sufficiently serious and that the series of incidents were not "cumulatively egregious" enough to reach constitutional dimensions. *Id*. at 861.

---

[4] *Boddie* also made clear that "[w]here no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Id.* at 861; *see also Hogan*, 738 F.3d at 516. Here, the parties do not dispute that Crawford and Corley have satisfied the subjective prong. Accordingly, we focus our analysis on the Eighth Amendment's objective component.

Applying *Boddie* and other district court cases interpreting *Boddie*, the district court concluded that the isolated instances during which Prindle fondled Crawford and Corley's genitalia did not rise to the level of a constitutional violation. The district court reasoned that, under *Boddie*, sexual abuse only states a cognizable Eighth Amendment claim if it occurs on more than one occasion, is "excessive in duration," involves direct contact with an inmate's genitalia (rather than contact through an inmate's clothing, as was the case here), or causes "physical injury, penetration, or pain." App'x 28-30.

*Boddie* does not support that narrow interpretation. *Boddie* held that sexual abuse by a corrections officer may constitute cruel and unusual punishment if it is "severe *or* repetitive." 105 F.3d at 861 (emphasis added). Thus, a single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct. Recurrences of abuse, while not a prerequisite for liability, bear on the question of severity: Less severe but repetitive conduct may still be "cumulatively egregious" enough to violate the Constitution. *Id*.

To show that an incident or series of incidents was serious enough to implicate the Constitution, an inmate need not allege that there was penetration, physical injury, or direct contact with uncovered genitalia. A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment. Similarly, if the situation is reversed and the officer intentionally brings his or her genitalia into contact with the inmate in order to arouse or gratify the officer's sexual desire or humiliate the inmate, a violation is self-evident because there can be no penological justification for such contact. And even if contact between an officer and an inmate's genitalia was initially justified, if the officer finds no contraband, continued sexual contact may be actionable.

In determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate. *See Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (explaining that

the Eighth Amendment analysis turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm" (internal quotation marks omitted)); *accord Hudson*, 503 U.S. at 6-7 (same).

To be sure, prison officials looking for contraband may subject inmates to reasonable strip searches and cavity searches. *Bell v. Wolfish*, 441 U.S. 520, 560 (1979). Indeed prison security and safety may require frequent searches of an intensely personal nature—and not every such search is properly the subject of a lawsuit. Searches that do not uncover contraband may be no less penologically justified than those that do. And even an officer who is meticulous in conducting a search does not violate an inmate's constitutional rights as long as the officer had no intention of humiliating the inmate or deriving sexual arousal or gratification from the contact. But a search may not be undertaken maliciously or for the purposes of sexually abusing an inmate. *See Hudson v. Palmer*, 468 U.S. 517, 528 (1984).

**b. Application**

The unjustified conduct alleged here is unquestionably "repugnant to the conscience of mankind" and therefore violates the Eighth Amendment. *Whitley*, 475 U.S. at 327 (quoting *Estelle*, 429 U.S. at 106); *see also United States v. Walsh,* 194 F.3d 37, 50 (2d Cir. 1999) (holding that a prison guard who repeatedly stepped on a prisoner's penis acted "contrary to contemporary standards of decency" (internal quotation marks omitted)); *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) ("An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant."); *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) ("A sexual assault on an inmate by a guard—regardless of the gender of the guard or of the prisoner—is deeply offensive to human dignity." (internal quotation marks omitted)).

Accepting the facts alleged in the complaint as true, Prindle violated Corley's rights by "fondl[ing] and squeeze[ing] [his] penis" in order to "make sure Mr. Corley did not have an erection." App'x 9. There is no penological justification for checking to see if an inmate has an erection, and

Prindle does not argue otherwise. Moreover, Prindle executed the frisk in the middle of Corley's visit with his wife, rather than at the beginning or end of the visit. The timing, combined with Prindle's stated reason for initiating the frisk, suggests that the frisk was pretext for sexual abuse. *Cf. Wolfish*, 441 U.S. at 559 (stating that the constitutionality of a prison body-cavity search turns on, among other things, "the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted"). Under *Boddie*, no amount of gratuitous or sexually-motivated fondling of an inmate's genitals—even if limited in duration or conducted through the inmate's clothes, as was the case here—is permitted by the Constitution.

Similarly, Prindle violated Crawford's rights when he allegedly "squeezed" and "fondled" Crawford's penis and "roamed" his hands down Crawford's thigh. App'x 11-12. In the circumstances alleged, the extensive search of Crawford's genitalia was not incident to any legitimate duties. *See Whitley*, 475 U.S. at 320-21. Moreover, Prindle's demeaning comments, including the statements "[t]hat doesn't feel like a penis to me," App'x 11, "I'll run my hands up the crack of your ass if I want to," *id.* at 12, and

subsequent taunts about having seen Crawford's penis, *id.* at 14, suggest that Prindle undertook the search in order to arouse himself, humiliate Crawford, or both.

### c.  Contemporary Standards of Decency

The standard set forth in *Boddie*, which condemns Prindle's alleged conduct, remains the same today.  But in determining the application of that standard, the Eighth Amendment requires courts to "look beyond historical conceptions to the evolving standards of decency that mark the progress of a maturing society."  *Graham v. Florida*, 560 U.S. 48, 58 (2010) (internal quotation marks omitted).  We must therefore also recognize that particular conduct that might not have risen to the level of an Eighth Amendment violation 18 years ago may no longer accord with community standards, and for that reason may state a claim today.

To ascertain contemporary standards of decency, courts begin by reviewing "objective indicia of consensus, as expressed in particular by the enactments of legislatures that have addressed the question."  *Roper v. Simmons*, 543 U.S. 551, 564 (2005).  Subsequent enactments by state and federal legislatures show that standards of decency with regard to sexual

abuse in prisons have evolved since 1997.  At the time *Boddie* was written, 18

states and the District of Columbia expressly criminalized corrections

officers' sexual contact with inmates.[5]  Today, all but two states[6] criminalize

sexual contact between inmates and corrections officers.[7]  Moreover, many

of the states that had enacted state laws proscribing officer-inmate sexual

contact prior to *Boddie* have, in the intervening years, adopted additional

---

[5] *See* Ariz. Rev. Stat. Ann. § 13-1419; Cal. Penal Code § 289.6; Conn. Gen. Stat. § 53a-73a; D.C. Code § 22-3014; Fla. Stat. § 794.011; Ga. Code Ann. § 16-6-5.1; Haw. Rev. Stat. § 707-732(e); Idaho Code § 18-6110; Iowa Code § 709.16; La.  Stat. Ann. § 14:134.1; Mich. Comp. Laws § 750.520c (criminalizing sexual contact where the actor has authority over the victim); N.J. Stat. Ann. §§ 2C:14-2, 2C:14-3; N.M. Stat. Ann. § 30-9-11; N.Y. Penal Law § 130.05(3); N.D. Cent. Code § 12.1-20-07; R.I. Gen. Laws § 11-25-24; S.D. Codified Laws § 22-22-7.6; Tex. Penal Code Ann. § 39.04; Wis. Stat. § 940.225.

[6] Since *Boddie*, 30 states criminalized sexual contact between corrections officers and inmates. *See* Ala. Code § 14-11-31; Alaska Stat. § 11.41.427; Ark. Code Ann. § 5-14-127(a)(2); Colo. Rev. Stat. § 18-7-701; 720 Ill. Comp. Stat. 5/11-9.2; Ind. Code § 35-44.1-3-10; Kan. Stat. Ann. § 21-5512; Ky. Rev. Stat. Ann. § 510.120; Me.  Stat. Tit. 17-A, § 255-A; Md. Code Ann. Crim. Law § 3-314; Mass. Gen. Laws ch. 268, § 21A; Minn. Stat. § 609.345; Miss. Code Ann. § 97-3-104; Mo. Rev. Stat. § 566.145; Mont. Code Ann. § 45-5-502; Neb. Rev. Stat. §§ 28-322; 28-322.01; Nev. Rev. Stat. § 212.187; N.H. Rev. Stat. Ann. §§ 632-A:3; 632-A:4; N.C. Gen. Stat. § 14-27.7 (criminalizing sexual contact where the actor has custody over the victim); Ohio Rev. Code Ann. § 2907.03; Or. Rev. Stat. § 163.454; 18 Pa. Cons. Stat. § 3124.2; S.C. Code Ann. § 44-23-1150(c)(2); Tenn. Code Ann. § 39-16-408; Utah Code Ann. § 76-5-412; Va. Code Ann. § 18.2-67.4; Vt. Stat. Ann. tit. 13, § 3257; Wash. Rev. Code § 9A.44.170; W. Va. Code §§ 61-8B-2, 61-8B-7; Wyo. Stat. Ann. § 6-2-304.  Delaware and Oklahoma only criminalize sexual intercourse or penetration, rather than sexual contact more broadly.  *See* Del. Code Ann. tit. 11, § 1259; Okla. Stat. tit. 21, § 1111(A)(7).

[7] Although the precise conduct prohibited varies by state, sexual contact is generally defined as intentional contact, for the purpose of sexual arousal, gratification, or abuse, of an inmate's sexual or intimate areas by a corrections officer, or of an officer's sexual or intimate areas by an inmate, or of the clothing covering either the inmate or officer's sexual or intimate areas.  *See, e.g.,* Ala. Code § 14-11-30(3).

laws and policies to prevent sexual abuse in prison.[8]  And in 2003, Congress

unanimously passed the Prison Rape Elimination Act ("PREA"), 42 U.S.C.

§§ 15601-15609—the first federal law to address the sexual abuse of

prisoners.[9]  These legislative enactments are the "clearest and most reliable

objective evidence of contemporary values."  *Atkins v. Virginia*, 536 U.S. 304,

315 (2002) (internal quotation marks omitted).  It is not only the number of

state laws that is significant, but "the consistency of the direction of change"

in the law.  *Id*.  These laws and policies reflect the deep moral indignation

that has replaced what had been society's passive acceptance of the problem

of sexual abuse in prison.  They make it clear that the sexual abuse of

---

[8] Some states have enacted laws further prohibiting sexual abuse. *See, e.g.,* N.Y. Penal Law § 130.52 ("A person is guilty of forcible touching when such person intentionally, and for no legitimate purpose, forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person; or for the purpose of gratifying the actor's sexual desire.").  Other states have adopted additional prison policies and regulations.  For example, the Michigan Department of Corrections "enacted cutting-edge policies to curb sexual assault" in prisons after Congress passed the PREA. Maurice Chammah, *Rape in the American Prison*, The Atlantic (Feb. 25, 2015), *available at* http://www.theatlantic.com/features/archive/2015/02/rape-in-the-american-prison/385550/.

[9] *See* Pat Nolan & Marguerite Telford, *Indifferent No More: People of Faith Mobilize to End Prison Rape,* 32 J. Legis. 129, 138-39 (2006) (noting that the PREA was a model of bipartisan cooperation, which Congress passed unanimously).  The PREA defines rape to include not only penetration, but oral sodomy, sexual assault with an object, and fondling. 42 U.S.C. § 15609(9).

prisoners, once overlooked as a distasteful blight on the prison system, offends our most basic principles of just punishment.

In light of this evolution, while the standard articulated in *Boddie* remains the same, "its applicability must change as the basic mores of society change." *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008) (quoting *Furman v. Georgia*, 408 U.S. 238, 382 (1972) (Burger, C.J., dissenting)). Accordingly, conduct that might not have been seen to rise to the severity of an Eighth Amendment violation 18 years ago may now violate community standards of decency, and for that reason, we believe that the officer's conduct in *Boddie* would flunk its own test today.[10]

---

[10] Additionally, today—more so than 18 years ago—we recognize that a *female* corrections officer is equally capable of sexually abusing a male inmate and the harm that can result from such abuse. *See, e.g.,* David Kaiser and Lovisa Stannow, *The Shame of Our Prisons: New Evidence*, N.Y. Rev. of Books (Oct. 24, 2013), *available at* http://www.nybooks.com/articles/archives/2013/oct/24/shame-our-prisons-new-evidence/ (noting that past experience has shown that "many people do not take sexual abuse committed by women as seriously as abuse committed by men," including "many corrections officers"); *see also Schwenk*, 204 F.3d at 1197 ("A sexual assault on an inmate by a guard—regardless of the gender of the guard or of the prisoner—is deeply offensive to human dignity." (internal quotation marks omitted)). There is also greater awareness of not only the physical but psychological and economic harms caused by sexual assaults in prisons. *See, e.g.*, PREA, 42 U.S.C § 15601 (finding that sexual abuse in prison results in higher rates of suicide, post-traumatic stress disorder, depression, HIV, AIDS, tuberculosis, recidivism, and violent crime, among other things); Sarah K. Wake, Note, *Not Part of the Penalty: The Prison Rape Elimination Act of 2003*, 32 J. Legis. 220, 223 (2006) ("[P]rison rape has a clear physical and economic impact upon everyone, not just those who are victimized.").

## II.    Qualified Immunity

Defendants argue that qualified immunity shields Prindle and Brown from liability because it was objectively reasonable for them to believe that Prindle's alleged sexual abuse did not violate the Eighth Amendment. Because the district court dismissed the complaint, it did not address whether Prindle and Brown are entitled to qualified immunity, and the parties did not thoroughly brief the issue on appeal. We therefore remand the case to the district court to decide the qualified immunity question in the first instance.

## CONCLUSION

For the reasons stated above, we REVERSE the district court's order dismissing the complaint and REMAND for further proceedings consistent with this opinion.