******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TIMOTHY TOWNSEND, JR. *v.* ANITA
HARDY ET AL.
(AC 38262)

DiPentima, C. J., and Sheldon and Harper, Js.

*Argued February 16—officially released June 13, 2017*

(Appeal from Superior Court, judicial district of New
Haven, Blue, J.)

*Timothy Townsend, Jr.*, self-represented, the appellant (plaintiff).

*Janelle Medeiros*, certified legal intern, with whom
were *Steven R. Strom*, assistant attorney general, and,
on the brief, *George Jepsen*, attorney general, for the
appellees (defendants).

*Opinion*

SHELDON, J. The plaintiff, Timothy Townsend, Jr., brought this action against two prison officials, the defendants, Anita Hardy and John Riccio, pursuant to 42 U.S.C. § 1983,[1] claiming that they had violated his constitutional rights while he was confined at the Cheshire Correctional Institution. The plaintiff claims that the trial court erred in rendering summary judgment in favor of the defendants on the ground that none of their alleged misconduct rose to the level of a constitutional violation. We affirm the judgment of the trial court.

In his amended complaint dated October 24, 2012, the plaintiff alleged the following facts, which the defendants did not dispute for purposes of the court's consideration of their motion for summary judgment. At all times relevant to the plaintiff's allegations, he was an inmate at the Cheshire Correctional Institution, where Riccio was a correction officer and Hardy was a captain. The plaintiff claimed that Riccio sexually harassed him on two occasions. First, on September 25, 2010, Riccio asked the plaintiff if he wanted "some sugar," which, the plaintiff alleged, is slang for a "kiss." Then, on October 3, 2010, Riccio told the plaintiff, "I'm checking on you because I care about you" and "I still genuinely care about you." On October 6, 2010, the plaintiff filed a complaint regarding those two alleged instances of sexual harassment with Hardy.

The plaintiff also alleged that Riccio threatened him when, on October 18, 2010, Riccio told the plaintiff, "Your life is going to be short lived in this block." That same day, the plaintiff filed a complaint with Hardy and other prison officials, alleging that he had been threatened by Riccio, and that he feared for his physical safety. The plaintiff alleged that Riccio had threatened him in retaliation for his filing of a complaint about the aforementioned sexual harassment.

On October 20, 2010, the plaintiff was moved to a restrictive housing unit while Hardy investigated his complaints that Riccio had sexually harassed and threatened him. While in the restrictive housing unit, the plaintiff reported Riccio's conduct to the Connecticut State Police. On November 2, 2010, Hardy explained to the plaintiff that his complaints against Riccio could not be substantiated, and thus the plaintiff was transferred out of the restrictive housing unit. On November 4, 2010, the plaintiff was interviewed by the Connecticut State Police regarding his allegations of sexual harassment and threatening by Riccio.

On November 5, 2010, Hardy told the plaintiff to "sign this statement stating you no longer fear for your safety." The plaintiff refused to do so, and thus was transferred back to the restrictive housing unit, where he remained for three days, until November 8, 2010,

when he was released back into the general population with no explanation. The plaintiff alleged that Hardy had transferred him to the restrictive housing unit in retaliation for contacting the Connecticut State Police regarding his claims against Riccio.

On the basis of the foregoing, the plaintiff claimed that Riccio and Hardy violated his constitutional rights and, pursuant to 42 U.S.C. § 1983, sought compensatory damages from both of them in their individual capacities.

On March 3, 2015, the defendants moved for summary judgment on all of the plaintiff's claims. They argued that, even if the plaintiff's factual allegations against Riccio were true, they were not serious enough to rise to the level of constitutional violations. As for the plaintiff's allegations against Hardy, the defendants argued that they too were de minimis. The defendants also argued that Hardy had no personal involvement in the decision to send the plaintiff to the restrictive housing unit.

On July 1, 2015, the court agreed with the defendants, over the plaintiff's objection, and issued a memorandum of decision rendering summary judgment in their favor. The plaintiff thereafter asked the court to articulate its ruling on the ground that it had failed to address his claimed constitutional violations. On October 6, 2015, the court filed an articulation explaining, inter alia: "The court's July 1, 2015 . . . decision implicitly addresse[d] these claims by following the precedent of the United States Court of Appeals for the Second Circuit holding that claims like the ones presented by the [plaintiff] do not constitute cognizable claims of constitutional violation. To be explicit, however, none of the alleged actions in this case violate the [plaintiff's] rights under any of the constitutional amendments claimed." This appeal followed.

Our standard of review in an appeal from the granting of a motion for summary judgment is plenary. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Desrosiers* v. *Diageo North America, Inc.*, 314 Conn. 773, 781, 105 A.3d 103 (2014).

The plaintiff first claims that the trial court erred in determining that his claim of sexual harassment against Riccio did not rise to the level of a constitutional viola-

tion. "[S]exual abuse by a corrections officer can give rise to an Eighth Amendment claim." *Crawford* v. *Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015). "The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials. . . . To state an Eighth Amendment claim, a prisoner must allege two elements, one subjective and one objective. First, the prisoner must allege that the defendant acted with a subjectively sufficiently culpable state of mind. . . . Second, he must allege that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions. . . . Analysis of the objective prong is context specific . . . and depends upon the claim at issue. . . . Although not every malevolent touch by a prison guard gives rise to a federal cause of action, the Eighth Amendment is offended by conduct that is repugnant to the conscience of mankind. . . . Actions are repugnant to the conscience of mankind if they are incompatible with evolving standards of decency or involve the unnecessary and wanton infliction of pain." (Citations omitted; internal quotation marks omitted.) Id., 256.

Here, the plaintiff's claim of sexual harassment against Riccio is based upon Riccio's statement asking him if he "wanted some sugar" and telling him that he cared about him. Even ascribing to those statements the sexual motivation alleged by the plaintiff, we cannot conclude that they were repugnant to the conscience of mankind. We agree with the trial court's determination that they were not sufficiently serious to reach constitutional dimensions and thus that the court did not err in rendering judgment as a matter of law in favor of Riccio on the claim that was based upon those statements.

The plaintiff also claims that the court erred in rendering summary judgment in favor of the defendants on his claims relating to the allegedly retaliatory conduct of Riccio and Hardy after he filed his complaint for sexual harassment against Riccio. We are not persuaded.

"Although prison officials may not retaliate against prisoners for exercising their constitutional rights . . . claims of retaliation must be examined with skepticism and care because they are prone to abuse because prisoners can claim retaliation for every decision they dislike. . . . Because retaliation claims can be fabricated easily, plaintiffs bear a somewhat heightened burden of proof, and summary judgment [for a defendant] can be granted if the claim appears insubstantial." (Citations omitted; internal quotation marks omitted.) *Aziz Zarif Shabazz* v. *Pico*, 994 F. Supp. 460, 467 (S.D.N.Y. 1998), vacated in part on other grounds, Docket No. 99-0223, 2000 U.S. App. LEXIS 3404 (2d Cir. February 24, 2000) (decision without published opinion, 205 F.3d 1324 [2d Cir. 2000]).

A first amendment retaliation claim under § 1983 requires that a prisoner establish three elements: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." (Internal quotation marks omitted.) *Gill* v. *Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. . . . Otherwise the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection. . . . In making this determination, the court's inquiry must be tailored to the different circumstances in which retaliation claims arise, bearing in mind that [p]risoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse." (Citations omitted; internal quotation marks omitted.) *Davis* v. *Goord*, 320 F.3d 346, 353 (2d Cir. 2003), superseded in part by *Davis* v. *Goord*, Docket No. 01-0116, 2003 U.S. App. LEXIS 13030 (2d Cir. February 10, 2003).

The plaintiff claims that Riccio and Hardy retaliated against him for filing a claim against Riccio for sexual harassment and for reporting Riccio to the state police. First, the plaintiff claims that Riccio retaliated against him for filing a sexual harassment claim by threatening, "[y]our life is going to be short lived in this block." Even construed as a threat to the plaintiff's physical safety,[2] it is not likely that that statement, in isolation, would have deterred a similarly situated inmate of ordinary resolve from exercising his constitutional rights.

While Hardy investigated his claims against Riccio, the plaintiff was placed in restrictive housing for his safety. After he spent approximately two weeks in restrictive housing, Hardy told him that his claims against Riccio could not be substantiated and he was thus released from restrictive housing. Three days later, Hardy asked the plaintiff to sign a document stating that he no longer feared for his safety, or else he would be remanded to restrictive housing. When he refused to do so, he was placed back into restrictive housing for three days, allegedly in retaliation for reporting Riccio's conduct to the state police.

The plaintiff's claims against Hardy fail, as a matter of law, for two reasons. First, the record reflects that it was the deputy warden of the prison, not Hardy, who ordered that the plaintiff be remanded to restrictive housing when he refused to sign the document stating that he no longer feared for his safety. Second, the record reflects that it is routine protocol for an inmate to be placed in restrictive housing after the inmate files a complaint against a prison official and expresses fear for his safety. It cannot reasonably be argued that place-

ment in restrictive housing for three days, out of the reach of the individual he allegedly fears, would deter a similarly situated inmate from exercising his constitutional rights.

Because the plaintiff's claims were de minimis, the trial court properly concluded that they did not rise to the level of constitutional violations and, thus, properly rendered summary judgment in favor of the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Title 42 of the United States Code, § 1983, provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

[2] Riccio filed an affidavit indicating that his statement was not meant as a threat, but, rather, as a comment "that if [the plaintiff] continued to misbehave, he would be transferred out of the unit."