******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CARLTON JOLLEY *v.* CAPTAIN VINTON ET AL.
## (AC 41989)

Lavine, Devlin and Bear, Js.

*Syllabus*

The self-represented, incarcerated plaintiff brought this action against the
defendant, a former state correctional institution administrative captain,
claiming violations of his federal constitutional rights. The plaintiff
alleged that the defendant retaliated against him for providing legal
advice to his fellow inmates by ordering the search of the plaintiff's
cell, the seizure of items from his cell, and the removal of the plaintiff
from his job at the prison's gym. Following a trial to the court, the court
rendered judgment in favor of the defendant, finding that the plaintiff
failed to prove that he was engaged in an activity protected by the first
amendment, that he was denied access to the courts in a specific,
pending, personal action, and that there was any causal connection
between his alleged protected conduct and the defendant's alleged retal-
iatory acts. From that judgment, the plaintiff appealed to this court.
*Held* that the trial court properly rendered judgment in favor of the
defendant, as that court's finding that the plaintiff had failed to prove
a causal connection between his conduct and the defendant's alleged
retaliation was not clearly erroneous: the court concluded that there
was no evidence of a retaliatory motive on the basis of the defendant's
testimony, which the court expressly found was credible, and the court
noted that the only evidence to establish a causal relationship between
the discharge of the plaintiff from his gym job and any claimed protected
activity was that of temporal proximity, which the court found insuffi-
cient to establish a causal connection; ample evidence supported the
court's finding that the defendant's actions that the plaintiff alleged were
retaliatory were premised solely on legitimate motives, and, although
the plaintiff pointed to evidence that he asserted supported his claim
of retaliation, the mere existence of evidence to support an alternative
conclusion is not sufficient to reverse a trial court's findings of fact.

Submitted on briefs December 11, 2019—officially released March 10, 2020

*Procedural History*

Action to recover damages for the alleged deprivation
of the plaintiff's federal constitutional rights, and for
other relief, brought to the Superior Court in the judicial
district of Hartford, where the court, *Dubay, J.*, granted
the defendants' motion to dismiss and rendered judg-
ment thereon, from which the plaintiff appealed to this
court, *Alvord*, *Keller*, and *Beach, Js.*, which reversed in
part the trial court's judgment and remanded the case
for further proceedings; thereafter, the plaintiff filed an
amended complaint and the case was tried to the court,
*Noble, J.*; judgment in favor of the named defendant,
from which the plaintiff appealed to this court.
*Affirmed.*

*Carlton Jolley*, self-represented, the appellant (plain-
tiff), filed a brief.

*Janelle R. Medeiros*, assistant attorney general, and
*William Tong*, attorney general, filed a brief for the
appellee (named defendant).

*Opinion*

DEVLIN, J. The self-represented plaintiff, Carlton Jolley, appeals from the judgment rendered in favor of the defendant, Captain Brian Vinton, a former administrative captain at the Enfield Correctional Institution (Enfield), in this action brought pursuant to 42 U.S.C. § 1983,[1] alleging that the defendant retaliated against the plaintiff for providing legal advice to his fellow inmates while incarcerated at Enfield. Because we conclude that the trial court's finding that the plaintiff failed to prove a causal connection between his conduct and the alleged retaliation was not clearly erroneous, we affirm the judgment of the trial court.

The following facts, as found by the trial court or as undisputed in the record, and procedural history are relevant. The plaintiff alleged that, at various times while incarcerated, he provided legal assistance to his fellow inmates. He further alleged that he primarily assisted with postconviction motions and petitions for writs of habeas corpus. In 2011, the defendant was an administrative captain at Enfield, where the plaintiff was then incarcerated. In that role, the defendant was responsible for investigating gang activity and security issues that threatened the safety of inmates or staff.

At some point prior to March 28, 2011, the defendant became aware that the plaintiff was providing legal assistance and had a reputation as a "jailhouse lawyer." Concerned that the plaintiff might have been using his legal work to smuggle contraband, the defendant alerted the warden to the plaintiff's activities and, together, they determined that the plaintiff's cell should be searched. On March 28, 2011, correction officers carried out a search of the plaintiff's cell and confiscated forty-one free postage legal mail envelopes, sixty-two plain white envelopes, seven homemade cassette tapes, four reams of typing paper, and twenty-six manila envelopes. A correction officer determined that all of the items seized were contraband and the plaintiff pleaded guilty to possessing contraband. Around this time, five large legal storage boxes were also seized from the plaintiff's cell. Inmates were limited to only two boxes in their cells. The plaintiff was instructed to examine the boxes to determine whether any of the contents pertained to active cases. The plaintiff was permitted to retain any of the contents regarding active cases with the caveat that if the contents exceeded two boxes, the excess would be stored elsewhere. All of the boxes not pertaining to active cases would be sent to the plaintiff's home address. Ultimately, three of the boxes were sent to the plaintiff's home.

In the spring of 2011, the plaintiff was working in the recreational office of Enfield's gym. Later that year, the defendant learned that the plaintiff was working multiple shifts per day in that position, which was

unusual. The defendant was concerned that the plaintiff may have been using the multiple shifts either to have illicit contact with other inmates or to establish inappropriate relationships with the staff. Subsequently, on December 16, 2011, the plaintiff was removed from his job, as were three other inmates due to the length of time they had held those positions. The plaintiff was allowed to apply for another job after his removal and was later assigned to work as a janitor.

On July 29, 2011, the self-represented plaintiff commenced the present action against the defendant and Attorney General George Jepsen. The plaintiff sought monetary damages pursuant to § 1983 for alleged violations of his rights under the first, eighth, and fourteenth amendments to the United States constitution. The trial court initially dismissed this action on grounds of statutory and sovereign immunity. See *Jolley* v. *Vinton*, 171 Conn. App. 567, 567, 157 A.3d 755 (2017). On appeal, this court affirmed the dismissal in regard to Attorney General Jepsen but reversed the dismissal as to the defendant. Id., 567–68. After the case was remanded, the plaintiff filed an amended complaint on December 7, 2017, clarifying his claims against the defendant. In the amended complaint, the plaintiff alleged that he suffered retaliation for the exercise of his first amendment rights. Specifically, he claimed that the defendant ordered (1) the search of the plaintiff's cell, (2) the seizure of numerous items from the plaintiff's cell, and (3) the removal of the plaintiff from his job, in retaliation for the plaintiff's provision of legal advice to fellow inmates.

The trial court, *Noble, J.,* conducted a two day trial on July 10 and July 11, 2018. The court heard testimony from both the plaintiff and the defendant. In particular, the defendant testified that the alleged retaliatory actions were prompted by concerns for safety and security. According to the defendant, when inmates assist one another in legal matters, there is a potential for bribery or extortion to occur by using the personal information gathered while providing legal advice. In addition, the defendant testified that inmates often use legal work to disguise contraband. Moreover, the defendant testified that the items seized from the plaintiff's cell each posed potential dangers, as they could be used for bartering, concealing weapons and other contraband, or—in the case of the reams of paper—even used as a weapon. Likewise, in regard to the legal storage boxes, the defendant testified that those boxes pose a fire hazard and may be used to conceal contraband; hence, the inmates were prohibited from having more than two boxes in their cells. Lastly, the defendant recalled that he had the plaintiff removed from his job in accordance with an institutional policy of not allowing inmates to work in the same job for a long period of time. This policy, according to the defendant, arose from concerns that extended periods of work enhanced

the risk that the supervising staff would become too comfortable and complacent with the inmates, which, in turn, could result in bribery, threats, or the smuggling of contraband. Further, the defendant testified that the plaintiff's removal from his job was not a disciplinary measure, and, therefore, the plaintiff was allowed to seek another job as soon as he was removed.

On July 11, 2018, the court issued its decision from the bench, rendering judgment in favor of the defendant. Specifically, the court found that the plaintiff had failed to prove that (1) he was engaged in an activity protected by the first amendment, (2) he was denied access to the courts in a specific, pending, personal action, and (3) there was any causal connection between his alleged protected conduct and the alleged retaliatory acts. This appeal followed.

Before turning to the claims on appeal, we set forth the applicable law governing first amendment retaliation claims and our scope and standard of review. "A first amendment retaliation claim under § 1983 requires that a prisoner establish three elements: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." (Internal quotation marks omitted.) *Townsend* v. *Hardy*, 173 Conn. App. 779, 785–86, 164 A.3d 824, cert. denied, 327 Conn. 909, 170 A.3d 679 (2017). Failing to establish any of the three elements is fatal to a first amendment retaliation claim. See, e.g., id., 787 (affirming summary judgment in favor of defendant where plaintiff failed to prove second element); *Higginbotham* v. *Sylvester*, 741 Fed. Appx. 28, 31–32 (2d Cir. 2018) (affirming summary judgment in favor of defendant where plaintiff failed to prove third element); *Otte* v. *Brusinski*, 440 Fed. Appx. 5, 6–7 (2d Cir. 2011) (affirming summary judgment in favor of defendant where plaintiff proved neither first nor third element). We conclude that the trial court properly determined that the plaintiff failed to establish causation and, thus, the plaintiff's claim must fail.

"To establish causation, a plaintiff must show that the protected speech was a substantial motivating factor in the adverse . . . action . . . . A plaintiff may establish causation indirectly by showing his speech was closely followed in time by the adverse . . . decision." (Citations omitted; internal quotation marks omitted.) *Cioffi* v. *Averill Park Central School District Board of Education*, 444 F.3d 158, 167–68 (2d Cir.), cert. denied, 549 U.S. 953, 127 S. Ct. 382, 168 L. Ed. 2d 270 (2006). The United States Court of Appeals for the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," but nonetheless previously has opined that temporal proximity alone may be insufficient to establish causation. *Gor-*

*man-Bakos* v. *Cornell Cooperative Extension Assn. of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001); *Colon* v. *Coughlin*, 58 F.3d 865, 872–73 (2d Cir. 1995) (commenting that, if only evidence of causal connection were temporal proximity, "we might be inclined to affirm the grant of summary judgment based on the weakness of [the plaintiff's] case"). Even where a plaintiff establishes a retaliatory motive, a defendant may still prevail "if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott* v. *Coughlin*, 344 F.3d 282, 287–88 (2d Cir. 2003).

A trial court's factual findings as to the essential elements of a first amendment retaliation claim are subject to the clearly erroneous standard of review. See *Jackson* v. *Monin*, 763 Fed. Appx. 116, 117 (2d Cir. 2019). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Under the clearly erroneous standard of review, a finding of fact must stand if, on the basis of the evidence before the court and the reasonable inferences to be drawn from that evidence, a trier of fact reasonably could have found as it did." (Internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Lorson*, 183 Conn. App. 200, 210, 192 A.3d 439, cert. granted on other grounds, 330 Conn. 920, 193 A.3d 1214 (2018). Moreover, "the mere existence in the record of evidence that would support a *different* conclusion, without more, is not sufficient to undermine the finding of the trial court." (Emphasis in original.) *In re Jayce O.*, 323 Conn. 690, 716, 150 A.3d 640 (2016).

In deciding that the plaintiff had not met his burden of establishing a causal connection, the court made the following factual findings. The court expressly found the defendant's testimony credible. On the basis of that testimony, the court concluded that there was no evidence of a retaliatory motive and, further, that "there was no evidence of even a dual motivation; that is, there was no better or weightier evidence that the actions, any of the actions undertaken by [the defendant] were for any reason other than legitimate, penological interest related to prison security and the orderly and safe administration of the prison." Furthermore, the court noted that "only evidence that would demonstrate a causal relationship between the discharge from the gym job and any claimed protected activity was that of temporal proximity," which the court found was insufficient to establish a causal connection.

After a careful review of the record before the trial court, we conclude that there was ample evidence to support the court's finding that the several retaliatory actions the plaintiff alleged—namely, the search of his

cell; the seizure of legal, writing, and mailing materials from his cell; and the removal from his job—were premised solely on legitimate motives. Although the plaintiff does point to evidence in his brief that he asserts supports his claim of retaliation and, in particular, the temporal proximity between his actions and the alleged retaliation, the mere existence of evidence to support an alternative conclusion is not sufficient to reverse a trial court's findings of fact. See *In re Jayce O.*, supra, 323 Conn. 716. The court's finding that there was no retaliatory motive or causal connection to support the plaintiff's first amendment claim of retaliation was not clearly erroneous. Therefore, the plaintiff failed to establish an essential element of his claim and the trial court properly rendered judgment in favor of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Title 42 of the United States Code, § 1983, provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."