21-933-cv
Lewis v. M&T Bank

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of March, two thousand twenty-two.

PRESENT:
> **ROBERT D. SACK,**
> **MICHAEL H. PARK,**
> **WILLIAM J. NARDINI,**
> *Circuit Judges.*

_____

**ROBERT R. LEWIS,**

> *Plaintiff-Appellant,*

> v.                                                    **21-933**

**M&T BANK, AMERICAN SECURITY INSURANCE COMPANY, STANDARD GUARANTY INSURANCE COMPANY, VOYAGER INDEMNITY INSURANCE COMPANY,**

> *Defendants-Appellees.* \*

_____

| | |
|---|---|
| **FOR PLAINTIFF-APPELLANT:** | Robert R. Lewis, Esq., pro se, Branford, CT. |
| **FOR DEFENDANTS-APPELLEES:** | Roy W. Arnold, Shawna J. Henry, Blank Rome LLP, Pittsburgh, PA (*for* M&T Bank). |
| | Frank G. Burt, Brian P. Perryman, Faegre Drinker Biddle & Reath LLP, |

* The Clerk of Court is respectfully directed to amend the caption as set forth above.

Washington, DC (*for* American Security Insurance Company, Standard Guaranty Insurance Company, and Voyager Indemnity Insurance Company).

Appeal from a judgment of the United States District Court for the District of Connecticut (Hall, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

In 2020, Robert R. Lewis, an attorney proceeding pro se, sued Defendants Manufacturers and Traders Trust Company d/b/a M&T Bank ("M&T") and Assurant Inc. ("Assurant"),[1] claiming that they overcharged him for flood insurance.[2] He alleged a "kickback scheme" in which M&T bought insurance exclusively from Assurant in exchange for free or discounted services and illegitimate payments—which functioned as rebates—but then sought reimbursement from Lewis for the full cost of the insurance policy. He asserted fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, tortious interference with business relationships, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a–110q. Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6), asserting that Lewis's claims were barred by the filed rate doctrine, which prevents courts from

---

[1] Lewis sued American Security Insurance Company, Standard Guaranty Insurance Company, and Voyager Indemnity Insurance Company, all of which Assurant owns.

[2] Lewis's mortgage agreement required him to maintain hazard insurance (including flood insurance) on his property and allowed M&T to purchase replacement insurance and to seek reimbursement from him if his coverage lapsed. Lewis calls this type of policy "Forced Placed Insurance," or "FPI." We refer to it as "lender placed insurance," or "LPI."

hearing claims involving regulator-approved insurance rates, and that Lewis failed to state a claim. Lewis argued that Assurant's rates were not on file with state regulators when M&T purchased the LPI in 2017. The district court granted Defendants' motions to dismiss, taking judicial notice of Assurant's filed rates. Lewis appeals. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

We review the dismissal of a complaint pursuant to Rule 12(b)(6) de novo, taking all factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). Dismissal is appropriate "when a defendant raises . . . an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (cleaned up); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) (holding that the district court may consider "the complaint . . . [and] matters of which judicial notice may be taken" on a Rule 12(b)(6) motion).

Courts may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Under Rule 201(b)(2), courts may take judicial notice of publicly available documents such as regulatory filings. *See Kramer*, 937 F.2d at 774 (holding that judicial notice applied to public documents filed with the SEC). But they must do so "to determine what statements [the documents] contained . . . [and] not for the truth of the matters asserted" in the documents. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (cleaned up). We review a district court's taking of judicial notice of facts for abuse of discretion. *Staehr*, 547 F.3d at 424.

Lewis asserts that Assurant had no filed rates with the Connecticut Insurance Department

3

("CID") when his LPI was purchased because it had withdrawn its Residential Mortgage Service Program ("RMSP") rates. He argues that the district court abused its discretion by taking judicial notice of Assurant's Residential and Commercial Flood Program ("Flood Program") filings to defeat that contention. We disagree. The CID documents about the Flood Program were "required by law to be filed . . . and no serious question as to their authenticity can exist." *Kramer*, 937 F.2d at 774.[3] Indeed, the court specifically noted that the hard copy CID public records bore a CID stamp and the electronic records were publicly accessible.[4] And the court considered these documents "not for the truth of the matters asserted [within the filings], but rather to establish the fact of such . . . filings," which demonstrated that Assurant did have filed rates with the CID when Lewis's LPI was purchased. *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d, 66, 70 (2d Cir. 1998) (cleaned up). It would have been "highly impractical and inconsistent with Fed. R. Evid. 201 to preclude a district court from considering [CID] documents when faced with a motion to dismiss" where the filed rate doctrine was at issue. *Kramer*, 937 F.2d at 774.

Nor was it an abuse of discretion to take judicial notice of the fact that the Flood Program, which was active when M&T purchased Lewis's LPI, was distinct from the RMSP, which was withdrawn shortly before the LPI purchase. The CID documents show that the Flood Program and the RMSP had different names, different dates of inception, and were associated with different

---

[3] Connecticut law requires insurers to make rate filings to the CID, *see* Conn. Gen. Stat. §§ 38a-676(a), (c), 38a-688(a), which become part of CID's public record, *see id.* § 38a-688(a)(5).

[4] We regularly take judicial notice of agency documents on official websites. *See, e.g.*, *Cangemi v. United States*, 13 F.4th 115, 124 n.4 (2d Cir. 2021) (taking judicial notice of the U.S. Army Corps of Engineers' website); *United States v. Akinrosotu*, 637 F.3d 165, 168 (2d Cir. 2011) (taking judicial notice of the official website for the Bureau of Prisons).

lines of business. Noting these differences did not require considering the truth of the matters asserted in the documents.[5]  *See Roth*, 489 F.3d at 509.

The district court also did not err in holding that the filed rate doctrine barred Lewis's claims. Under the doctrine, "any 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland, Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994). Two rationales justify the doctrine: (1) "courts should not undermine agency rate-making authority by upsetting approved rates (the principle of nonjusticiability)," and (2) "litigation should not become a means for certain ratepayers to obtain preferential rates (the principle of nondiscrimination)." *Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 261 (2d Cir. 2015) (cleaned up). A claim that undermines regulated rates "may be barred even if it can be characterized as challenging something other than the rate itself." *Id.* at 262.

*Rothstein* is directly applicable to this case. There, plaintiffs brought RICO claims and alleged that they were "fraudulently overbilled" because the rates they were charged for LPI "did not reflect secret 'rebates' and 'kickbacks'" in the form of loan tracking services that the loan

---

[5] Lewis also argues that the district court took judicial notice of documents "without notifying plaintiff of the nature of [the] fact to be noticed and fail[ed] to provide plaintiff with an opportunity to be heard pursuant to [Fed. R. Evid. 201(e)]." Appellant's Br. at 3. Lewis waived this argument by failing to request a Rule 201(e) hearing below. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988) ("Absent a request under Rule 201(e) for a hearing before the district court, the fact that the court took judicial notice of a fact or the tenor of the notice taken is not grounds for later appeal."). Lewis concedes in his reply brief that Defendants "may be correct that [he] should have requested a retrospective hearing." Reply Br. at 7. In any event, the court did provide notice at oral argument by explaining that it would take "judicial notice of filings at the agency" if it could "see the filing." App'x at 120. The court also allowed Lewis to file a supplemental brief after Assurant submitted those documents so that he had a chance to "address[] those new filings" before it rendered a decision on the motions to dismiss. App'x at 151.

servicer received from the insurance company. *Id.* at 259–60. The court barred the plaintiffs' claims under the filed rate doctrine. It explained that where the plaintiffs' theory was that they were "overbilled when they were charged the full LPI rates (which were approved by regulators), instead of lower rates" due to the kickbacks, that theory could succeed "only if the [lender's] arrangement with [the insurance company] should have been treated as part and parcel of the LPI transaction and *reflected in the LPI rates*." *Id.* at 262. Under the nonjusticiability principle, however, courts should not determine whether "insurer-provided services should have been reflected in the calculation of LPI" because it is "squarely for the regulators to say what should or should not be included in a filed rate." *Id.* at 262–263.

The court also concluded that the plaintiffs' claims violated the nondiscrimination principle, which "applies even to claims that purport to seek relief other than a lower rate." *Id.* at 263. "Any damages recovered by these Plaintiffs would operate like a rebate . . . to give them a preference over other borrowers who were charged for LPI. While non-suing borrowers serviced by [the loan servicer] would be billed at the filed LPI rates, Plaintiffs would enjoy the discount that [the insurance company] allegedly provided to [the loan servicer]." *Id.* (cleaned up). For the same reasons, we conclude that the filed rate doctrine bars Lewis's claims here.

Lewis's arguments to the contrary are meritless. He first tries to distinguish *Rothstein* based on the fact that the plaintiffs there did not dispute that there were filed rates. As noted above, however, the district court appropriately took judicial notice of the fact that Assurant *had* rates on file when the LPI was purchased. Lewis next asserts that the "alleged misconduct" distinguishes his case from *Rothstein*. Appellant's Br. at 19. But, as explained above, the alleged misconduct in that case was almost identical—the only difference is that in this case, the insurance

6

company allegedly provided illegitimate payments in addition to services to the loan servicer, which does not affect the filed rate doctrine analysis.

Finally, Lewis contends that the district court failed to apply Connecticut law, which he asserts has not adopted the filed rate doctrine. We have repeatedly held, however, that the filed rate doctrine precludes both federal and state claims. *See Rothstein*, 794 F.3d at 261 ("The [filed rate] doctrine reaches both federal and state causes of action and protects rates approved by federal or state regulators."); *see also Simon v. KeySpan Corp.*, 694 F.3d 196, 204–05 (2d Cir. 2012) (noting that the filed rate doctrine is "rigid and unforgiving . . . [a]nd when [it] applies, it bars both state and federal claims"); *Wegoland*, 27 F.3d at 20 ("[T]he filed rate doctrine acts to bar state causes of action."). Lewis's assertion is meritless.

We have considered all of Lewis's remaining arguments and find them to be without merit. Accordingly, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7