[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16954

_____

D.C. Docket No. 5:14-cv-00237-WTH-PRL

KIRSTIN SCONIERS,

Plaintiff - Appellant,

versus

FNU LOCKHART,
Marion County Sheriff's Correction Officer,
individually and in his official capacity,
MATTHEW B. MCNEELY,
Sargent, Marion County Sheriff's Office,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 7, 2020)

Before WILLIAM PRYOR and ROSENBAUM, Circuit Judges, and Moore,[*] District Judge.

ROSENBAUM, Circuit Judge:

Some things are never acceptable, no matter the circumstances. Sexual abuse is one.

Sexual abuse "has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society." *Graham v. Sheriff of Logan Cty.*, 741 F.3d 1118, 1122-23 (10th Cir. 2013) (citation and quotation marks omitted). Nor does it comport with contemporary standards of decency. Congress itself implicitly recognized as much in 2013, when it amended the Prison Litigation Reform Act ("PLRA") to allow prisoners to recover damages "for mental or emotional injury suffered while in custody[,] without a prior showing of physical injury," when the prisoner can demonstrate "the commission of a sexual act" as the basis for the damages he seeks. *See* 42 U.S.C. § 1997e(e) (2013).

As the Supreme Court clarified in *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), a correctional officer's malicious and sadistic actions that both have no legitimate penological purpose and are unacceptable by contemporary standards of decency subject a prisoner to cruel and unusual punishment, in violation of the Eighth

---

[*] Honorable K. Michael Moore, Chief United States District Judge for the Southern District of Florida, sitting by designation.

Amendment. This case requires us to evaluate *Boxer X v. Harris*, 437 F.3d 1107 (11th Cir. 2006), our pre-*Wilkins* prisoner-sexual-abuse precedent for continuing viability. When we do so, we must conclude that *Wilkins* (particularly as construed in light of the 2013 amendments to the PLRA) partially abrogated *Boxer X*.

Here, the district court relied on *Boxer X* to dismiss Plaintiff-Appellant prisoner Kirstin Sconiers's claims that, during a purported disciplinary encounter with Defendant-Appellee Jesse Lockhart, Lockhart pulled down Sconiers's pants and forcefully penetrated Sconiers's anus with his finger. Because we conclude that *Boxer X* has been abrogated in part, and because Sconiers has presented sufficient evidence on summary judgment to establish both parts of a post-*Wilkins* Eighth Amendment claim, we now vacate the portion of the district court's grant of summary judgment to Lockhart that relied on the abrogated holding of *Boxer X*. We also review the rest of the district court's order granting summary judgment against Sconiers. After careful consideration, we vacate and remand in part and affirm in part.

**I.**

Sconiers was imprisoned at the Marion County Jail, where he was serving a sentence for a misdemeanor conviction for exposing his sexual organs. On February 12, 2014, Sconiers met with his attorney via videoconference at the jail. After the meeting ended, Lockhart arrived to escort Sconiers back to his cell.

3

Based on events that followed, Sconiers, then proceeding *pro se*, filed suit under 42 U.S.C. § 1983 against Lockhart and Matthew B. McNeely,[1] both correctional officers at the jail.  He alleged the defendants violated his Eighth Amendment right through the use of excessive force and sexual assault.  During the litigation, Lockhart and McNeely filed motions for summary judgment.  After considering them, the district court entered summary judgment for both defendants. Sconiers, now represented, appeals.

For purposes of our review of the district court's entry of summary judgment, we accept Sconiers's version of the facts as true, affording all justifiable inferences to Sconiers.  *See Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (per curiam).  Whether Sconiers can establish that the defendants did what he alleges is something he must prove to a jury if his case survives summary judgment. So we set forth here only Sconiers's side of the story.

---

[1] Sconiers's claims against McNeely (as well as additional claims against Lockhart that we do not review here), are not at issue on appeal.  When we granted Sconiers's motion to proceed in forma pauperis on appeal on his claims against Lockhart arising out of the events we describe in Section I of this opinion, we denied Sconiers's motion as it concerned his claims regarding other events in which Lockhart and McNeely were involved because we found those claims to be frivolous.  After that, Lockhart sought dismissal of all claims arising out of those other events, and McNeely sought dismissal from the appeal altogether, since he was not a subject of Sconiers's claims about the takedown, pepper-spraying, and alleged sexual assault.  At oral argument, counsel for Sconiers conceded that Sconiers is no longer pursuing his claims related to those other events. We therefore **AFFIRM** summary judgment as it relates to these other events that we do not specifically describe in Section I of this opinion, and we **DISMISS** McNeely from this case.

We pick up the facts when Lockhart came on the scene to return Sconiers to his cell. Under Sconiers's version of the facts, after his meeting with his attorney ended, Sconiers stood to return to his cell. Lockhart instructed Sconiers to sit back down, and he complied. Then Lockhart ordered him back on his feet. Once Sconiers again stood, Lockhart again told him to sit. And after he sat, Lockhart once again told him to stand.

Fed up, Sconiers asked Lockhart, "What kind of games are you playing?" In response, Lockhart allegedly pepper-sprayed Sconiers in the face twice, slammed him to the ground, and slapped his face, all while Sconiers was shackled by hand restraints, leg irons, and wrist restraints. Sconiers alleged Lockhart then drove his knee into Sconiers's back and pulled Sconiers's pants down.

Once Lockhart had Sconiers on the ground and his pants down, Sconiers claimed, Lockhart forcefully penetrated Sconiers's anus with his finger. Lockhart was able to do this because Sconiers was not wearing underwear.

After the dust settled, the Marion County Sheriff's Office launched an investigation. Sconiers gave investigators basically the same version of facts that he set forth in this case. He further explained to the Sheriff's Office investigators that he hesitated before telling others about Lockhart's sexual assault because it embarrassed him and because he assumed the jail administrators were in league with the guards.

5

After interviewing all those with knowledge of the incident, the Sheriff's Office investigators concluded, as relevant here, that Sconiers's claims were unfounded and that Sconiers himself had engaged in misconduct by failing to comply with Lockhart's commands. Based on this finding, prosecutors charged Sconiers with non-violently resisting Lockhart's instructions. Sconiers eventually pled guilty to this charge.

In the meantime, though, Sconiers sought medical attention for his injuries and recounted his donnybrook with Lockhart in an incident report. In that report, Sconiers stated that Lockhart's digital penetration caused him anal pain for two weeks. In particular, Sconiers complained that as a result of the incident, his anus stung when he had bowel movements, and he noticed blood on his toilet paper when he used the bathroom. Treatment notes reflect that Sconiers told medical staff an officer had put his finger up his anus and that his anus had been sore as a result. He explained that he had not reported the alleged assault earlier because he had been on suicide watch and "didn't trust telling anyone [his] situation . . . ." Dr. Jaime Rubios conducted a rectal exam and found that Sconiers had "very small . . . ext[ernal] hemorrhoids" that did not appear to be bleeding or tender.

A few months after the events of February 12, 2014, Sconiers commenced this suit. He filed a *pro se* complaint under 42 U.S.C. § 1983. In his most recent version

6

of his complaint, Sconiers asserted that Lockhart violated the Eighth Amendment by engaging in excessive force.

Lockhart eventually sought summary judgment on Sconiers's claims. The district court granted his motion. In constructing the facts underlying the sexual-assault claim, the district court found that "all of the evidence [shows] that [Sconiers] was fully clothed at all times during the encounter . . . ." Based on that conclusion, the district court reasoned that Lockhart's penetration of Sconiers's anus was "necessarily" inhibited by Sconiers's clothing since it did "not involve-body-to-body contact."

Turning to the law, the district court relied upon our decision in *Boxer X* to find that those facts "simply do not" violate the Eighth Amendment. It based this conclusion on the alternative grounds that both the force used and the injury caused by Lockhart's supposed over-the-pants penetration were *de minimis*.

On the issues of whether Lockhart's pepper-spraying and takedown constituted excessive force, the district court first considered Lockhart's use of pepper spray. It noted that Sconiers attested in an affidavit that he complied with Lockhart's initial order to sit, but Lockhart ordered him to sit down three more times. The district court construed this allegation to mean that Sconiers implicitly admitted he defied Lockhart by remaining standing, or Lockhart would not have had reason to tell him to sit down three times while he was already sitting. The court then further

7

reasoned that had Sconiers not flouted Lockhart's instructions, Lockhart would not have had to pepper-spray him.

Moving on to Lockhart's takedown of Sconiers, the district court concluded that Sconiers had changed his story because his first affidavit had claimed that Lockhart "force[d]" him to the floor, not "slammed" him there as he had alleged in his other affidavits. The district court then found that "forc[ing]" an inmate to the ground did not constitute excessive force under the circumstances. In particular, the court determined that Lockhart was justified in engaging in this action because he needed to restore order after pepper-spraying Sconiers. So the district court granted summary judgment on this aspect of Sconiers's Eighth Amendment claim as well.

Sconiers now appeals.

## II.

We review *de novo* the district court's grant of summary judgment, viewing all facts and drawing all reasonable inferences in the light most favorable to the nonmoving party. *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1141 (11th Cir. 2014). In conducting our analysis in subsection III.A. below of the district court's order, we further discuss the standards district courts must apply in resolving motions for summary judgment.

Because Sconiers proceeded *pro se* in the district court, we liberally construe his pleadings. *Trawinski v. United Techs.*, 313 F.3d 1295, 1297 (11th Cir. 2002)

(per curiam). We also credit the "specific facts" pled in Sconiers's sworn complaint when considering his opposition to summary judgment. *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (per curiam) ("Plaintiff alleged specific facts in his sworn complaint and they were required to be considered in their sworn form.").

## III.

On appeal, Sconiers, now counseled, raises two categories of issues. He contends the district court erred when it (1) allegedly resolved material issues of fact to enter summary judgment for Lockhart and (2) applied *Boxer X v. Harris*, 437 F.3d 1107 (11th Cir. 2006), to dismiss his sexual-assault claim. Lockhart responds by raising a threshold defense. He contends that *Heck v. Humphrey*, 512 U.S. 477 (1994), imposes an unconquerable barrier to Sconiers's claims arising out of the pepper-spraying and takedown because Sconiers pled guilty to obstructing Lockhart, and that obstruction justified Lockhart's use of pepper-spray and the takedown maneuver.

After careful consideration and with the benefit of oral argument, we conclude the district court erred in granting summary judgment to Lockhart as it relates to the claims at issue. We therefore vacate the judgment and remand to the district court for further proceedings consistent with this opinion. We divide our discussion into three parts. In subsection III.A, we consider whether the district court improperly resolved factual disputes against Sconiers. Then, in subsection III.B, we address

Sconiers's contentions that the district court erred when it granted summary judgment on his claims against Lockhart. Finally, we analyze in subsection III.C whether the *Heck* bar impacts Sconiers's claims.

### A.

Sconiers argues that, in resolving the summary-judgment motion, the district court made inappropriate factual findings and improperly resolved competing inferences against him. We therefore pause to review the rules applicable to evaluating summary-judgment motions.

Summary judgment is not a time for fact-finding; that task is reserved for trial. *See*, *e.g.*, *Tolan v. Cotton*, 572 U.S. 650, 655–57 (2014). Rather, on summary judgment, the district court must accept as fact all allegations the non-moving party makes, provided they are sufficiently supported by evidence of record. *See Anderson*, 477 U.S. at 251. So when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013). Indeed, if "the only issue is one of credibility," the issue is factual, and a court cannot grant summary judgment. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742–43 (11th Cir. 1996).

We must also bear in mind that, in identifying the relevant facts to resolve a motion for summary judgment, a district court must "view all evidence and make all reasonable inferences in favor of" the non-moving party. *Allen v. Bd. of Pub. Educ.*

10

*for Bibb Cty.*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citations and quotation marks omitted). And if a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment. *Id.* Rather, the court must hold a trial to get to the bottom of the matter.

Here, the district court improperly resolved material issues of fact—two relating to the sexual-assault claim and two to the takedown and pepper-spray claims. We identify them in turn.

With respect to Sconiers's sexual-assault claim, the district court first improperly found that "[a]ll of the evidence is to the effect that [Sconiers] was fully clothed at all times during the encounter between Lockhart and [Sconiers]," and Sconiers "[did] not state that his clothing was removed to facilitate the alleged assault upon his rectum." In fact, though, the record does not indisputably bear out this factual conclusion.

To the contrary, regarding the first factual conclusion, Sconiers filed a November 9, 2014, declaration swearing that Lockhart "pulled down [his] 'pa[]nts' [sic]" and "stuck his force bound finger into [his] 'rect[u]m.'" Perhaps Lockhart's and his fellow guard's strenuous assertions that this did not happen are true. But those protestations cannot support summary judgment since Sconiers has sufficiently attested that these events did, in fact, occur.

11

Nor as Lockhart asserts, can the district court's finding be upheld on the basis that Sconiers filed subsequent affidavits that did not specifically allege that Lockhart removed his pants. Sconiers's November 9 allegations could be disregarded only if they blatantly contradicted his subsequent affidavits. *See Lane v. Celotex Corp.*, 782 F.2d 1526, 1532 (11th Cir. 1986) (per curiam) ("[W]e may *only* disregard an affidavit that 'contradicts, without explanation, previously given *clear* testimony.'") (emphasis in original); *Cf. Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010) ("Given that there is an inherent inconsistency between the affidavit and the two previous depositions, and Latimer has failed to provide an explanation for the contradiction, the affidavit may be dismissed as a sham.").

But nothing in Sconiers's subsequent affidavits disclaims—or is even the least bit inconsistent with—his contention that Lockhart yanked his pants down. Instead, in the affidavit upon which Lockhart relies, Sconiers simply makes no reference whatsoever to where his pants were at the time of the assault. Because Lockhart can point to no inconsistencies between Sconiers's November 9 declaration and his later affidavits, the jury—not the judge—must decide what, if anything, to make of the fact that Sconiers did not mention the location of his pants every time he discussed the alleged assault.

Besides the district court's factual judgment about the location of Sconiers's pants during the alleged sexual assault, the district court also improperly concluded

12

that Sconiers experienced no bodily injury as a result of the attack. True, two weeks after the alleged assault, a medical examination opined that Sconiers's pain—which he described as a level 7 out of 10—resulted from hemorrhoids. But that is not necessarily inconsistent with Sconiers's allegation that Lockhart anally penetrated him with his finger. *See* https://www.webmd.com/digestive-disorders/understanding-hemorrhoids-basics#1 (last visited Dec. 11, 2019). And Sconiers also reported that upon defecating, he had been experiencing stinging and had observed blood on his toilet paper since the alleged attack. So we must conclude for purposes of reviewing the summary-judgment motion that Lockhart physically injured Sconiers when he allegedly stuck his finger up Sconiers's anus.

The district court likewise improperly resolved two factual issues in Lockhart's favor on Sconiers's excessive-force claims arising from the pepper-spraying and takedown. To contextualize, unlike with physical sexual assaults, correctional officers in a prison setting can use pepper-spray or a takedown to subdue an inmate as long as a valid penological reason supports the use of such force. *See Thomas v. Bryant*, 614 F.3d 1288, 1301–11 (11th Cir. 2010); *Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008).

The district court first erred in concluding that Lockhart had a valid reason to use the pepper-spray because Sconiers defied Lockhart's legitimate orders to sit. For his part, Sconiers attested the exact opposite happened. Specifically, he claimed that

Lockhart toyed with him by commanding him to both stand and sit repeatedly. Pointing to one of Sconiers's affidavits that acknowledged Lockhart instructed Sconiers to sit three times, the district court found Sconiers implicitly conceded that he had defied Lockhart's legitimate orders. But Sconiers's acknowledgement that Lockhart told him to sit three times is not inconsistent with Sconiers's version of the story: according to Sconiers, Lockhart told him to sit repeatedly only in the context of treating him like a yo-yo, directing him to sit, only to immediately instruct him to stand once he did so. On summary judgment, we must accept Sconiers's side of the story. When we do so, Lockhart's use of pepper-spray was not penologically justified. *See Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) ("[W]hen conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version.").

The district court also improperly made a second factual finding concerning Lockhart's takedown of Sconiers. It determined that Lockhart did not slam Sconiers to the ground, despite Sconiers's attestation that he did. The district court reached this conclusion because it found conflict between Sconiers's statements in different affidavits and declarations that Lockhart had "slammed" him to the ground and that he had "force[d]" him to the ground. But while "slamm[ing]" can be a more extreme form of "forc[ing]" to the ground, there is nothing necessarily inconsistent about describing being "slammed" to the ground as being "forc[ed]" to it—particularly

14

since we are construing a *pro se* litigant's filings. For this reason, a reasonable jury could conclude that Sconiers was "slammed" to the ground, and the district court erred in determining it could not.

## B.

Now that we have identified the controlling universe of facts in this summary-judgment case, we consider whether, based on those facts, the district court correctly determined that Sconiers's Eighth Amendment claims cannot survive summary judgment. We begin by reviewing the principles applicable to Eighth Amendment excessive-force and sexual-assault claims.

The Eighth Amendment, among other things, prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. As the Supreme Court has explained, "the unnecessary and wanton infliction of pain" qualifies under the Eighth Amendment as proscribed "cruel and unusual punishment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Nevertheless, the Supreme Court has instructed that what rises to the level of an "unnecessary and wanton infliction of pain" differs based on the type of Eighth Amendment violation alleged. *Id.*

Since Sconiers asserts excessive-force and sexual-assault claims, "the core judicial inquiry" requires us to consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (citation and quotation marks omitted). This standard

requires a prisoner to establish two elements—one subjective and one objective:  the official must have both "acted with a sufficiently culpable state of mind" (the subjective element), and the conduct must have been "objectively harmful enough to establish a constitutional violation."  *Hudson*, 503 U.S. at 8 (cleaned up).

With respect to the subjective element, "to have a valid claim on the merits of excessive force in violation of [the Eighth Amendment], the excessive force must have been sadistically and maliciously applied for the very purpose of causing harm." *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002); *see also Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010).

As for the objective component of an excessive-force violation, it focuses on whether the official's actions were "harmful enough," *Hudson*, 503 U.S. at 8, or "sufficiently serious," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), to violate the Constitution. "Not every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 37–38.  Instead, the Eighth Amendment prohibits force that offends "contemporary standards of decency," regardless of whether "significant injury is evident," though the extent of injury may shed light on the amount of force applied or "whether the use of force could plausibly

16

have been thought necessary."   *Wilkins*, 559 U.S. at 37 (citation and internal quotation marks omitted).   In subsection III.B.1 below, we apply these standards to Sconiers's sexual-assault claim.   We consider them in subsection III.B.2 in relation to his more traditional excessive-force claims.

## 1.

We examine Sconiers's sexual-assault claim and the record to ascertain whether, if a reasonable jury believes his evidence, he can establish a violation of the Eighth Amendment.   As we have noted, that requires us to consider both the subjective and objective elements of his claim.

We address the subjective component first.   Sconiers asserts that Lockhart forcefully shoved his finger into Sconiers's unclothed anus after Lockhart had already taken Sconiers to the ground.   This does not describe the case of a medical professional performing an appropriate examination or an officer executing a permissible search.   Rather, if a reasonable jury believed Sconiers's testimony, it would have to conclude that Lockhart sought to sexually abuse him, not to appropriately correct Sconiers's behavior.   *See Crawford*, 796 F.3d at 259-60.   And sexual abuse of this type satisfies the subjective element of an Eighth Amendment claim, as it is "sadistically and maliciously applied for the very purpose of causing harm."   *Johnson*, 280 F.3d at 13.   It "has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against

17

society." *Graham*, 741 F.3d at 1122-23 (citation and quotation marks omitted). *See also Boddie*, 105 F.3d at 861; *Ricks v. Shover*, 891 F.3d 468, 474-75 (3d Cir. 2018); *Rafferty v. Trumbull Cty.*, 915 F.3d 1087, 1097 (6th Cir. 2019); *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000).

Turning to the objective element, this Court has held that "severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment." *Boxer X*, 437 F.3d at 1111. We do not need to linger long over the contours of our standard. A guard who sadistically and maliciously forces his finger into an inmate's anus, as Sconiers accuses Lockhart of doing, plainly commits "severe . . . sexual abuse of a prisoner" and violates the Eighth Amendment. *Boxer X*, 437 F.3d at 1111; *see also Ricks v. Shover*, 891 F.3d 468, 476 (3d Cir. 2018) ("Absent a legitimate penological purpose, the type of touching involved in . . . a body-cavity search would be undoubtedly cruel and unusual."); Ga. Code Ann. § 16-6-22.2 ("A person commits the offense of aggravated sexual battery when he or she intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person.").

The district court's contrary conclusion, based on one of our holdings in *Boxer X*, cannot be sustained. In *Boxer X*, the prisoner alleged that a guard forced him to disrobe and masturbate in front of her for the guard's sexual enjoyment. *Boxer X*, 437 F.3d at 1109. When the prisoner refused to comply, the guard submitted

18

fictional disciplinary reports accusing the inmate of misconduct. *Id.*  The prisoner filed suit, contending the guard's insistence that he either masturbate or face disciplinary measures violated the Eighth Amendment's ban on cruel and unusual punishment. *Id.*

We reached two holdings on appeal.  First, we "join[ed] other circuits recognizing that severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment." *Id.* at 1111 (collecting cases).  Second, we nevertheless ultimately found that the prisoner's claims were not "actionable" because the prisoner did not suffer "more than *de minimis* injury." *Id.*

Four years after we decided *Boxer X*, the Supreme Court issued *Wilkins*. *Wilkins* shows that we erred in *Boxer X* by focusing primarily on the injury, as opposed to the nature of the defendant's actions, in determining whether the prisoner established the objective component of his Eighth Amendment claim.  As we have noted, *Wilkins* explained that, contrary to an injury-centric requirement, *Hudson* shifted "the core judicial inquiry . . . to the nature of the force—specifically, whether it was nontrivial and was applied maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 39 (cleaned up).  And dismissing a case simply because it fails to satisfy "some arbitrary quantity of injury . . . improperly bypasses this core inquiry." *Id*. (citation and internal quotation marks omitted).  Under the objective

19

component of an Eighth Amendment claim, the force used, not the injury sustained, is what "ultimately counts." *Id.* at 38.

Although *Boxer X*'s holding that "severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment," remains good law, *Wilkins* clarified that courts cannot find excessive force claims not "actionable" because the prisoner did not suffer "more than *de minimis* injury." *Boxer X*, 437 F.3d at 1111. As we had not previously announced this abrogation, the district court here understandably relied on *Boxer X*. For the reasons we have explained, though, we must now retire the abrogated portion of *Boxer X*. The lack of serious physical injury, considered in a vacuum, cannot snuff out Eighth Amendment sexual-assault claims.

If Sconiers can prove to a reasonable jury's satisfaction that Lockhart sadistically and maliciously forced his finger into Sconiers's anus, Lockhart's actions violate the Eighth Amendment because they constitute severe sexual abuse of a prisoner. And to the extent that the question remains, such claims are also specifically allowed in the absence of a physical injury under the current version of the PLRA.

## 2.

Now we turn to Sconiers's claim that Lockhart engaged in excessive force when Lockhart allegedly pepper-sprayed Sconiers and "slammed" him to the

ground.  At the first element of the Eighth Amendment analysis—the subjective inquiry—as we have noted, we must accept Lockhart's version of the facts, which is that Lockhart took the challenged actions because Sconiers questioned Lockhart when Lockhart toyed with him like a yo-yo.  According to Sconiers, Lockhart repeatedly and alternatingly ordered Sconiers to sit down and stand up for nothing more than Lockhart's own enjoyment.

If Sconiers can prove that to a reasonable jury, it appears that Lockhart had no legitimate penological purpose in demanding that Sconiers repeatedly sit and stand. So it follows that punishing Sconiers for questioning Lockhart's orders in this regard also may not be sustained as having a legitimate penological purpose.  Of course, to the extent that a jury concludes that Lockhart sought Sconiers's compliance with legitimate orders to sit, the inquiry then focuses on whether Lockhart maliciously and sadistically engaged in force disproportionate to the need to enforce compliance with his directives.

As for the objective element of Sconiers's Eighth Amendment claim as it relates to Lockhart's pepper-spraying and takedown, to the extent that Lockhart's actions satisfy the first Eighth Amendment element, Lockhart's alleged conduct also violates the second.  Pepper-spraying and slamming a person to the ground without penological justification certainly offends common standards of decency. Nevertheless, Lockhart has not identified any physical injury that resulted from these

21

non-sexual actions, so while he can state an Eighth Amendment violation based on the facts construed in the light most favorable to him, if a reasonable jury accepts his version of events, his recovery is limited to nominal damages. *See* 42 U.S.C. § 1997e(e).[2]

## C.

Lockhart seeks to rescue his summary judgment as it relates to the takedown and pepper-spraying by invoking *Heck v. Humphrey*, 512 U.S. 477 (1994), and collateral estoppel. As background, and as we have noted, following the incidents between Sconiers and Lockhart, Sconiers pled guilty to resisting or obstructing an officer without violence. Lockhart argues that Sconiers's guilty plea to this charge precludes him under *Heck* and Florida collateral estoppel from "asserting that he was obeying Lockhart's orders to sit down so the area could be cleared and did not lunge at the officer." Lockhart is mistaken.

In *Heck*, the Supreme Court was concerned about prisoners using § 1983 to implicitly invalidate their convictions, thus making an "end-run around habeas." *Dyer v. Lee*, 488 F.3d 876, 880 (11th Cir. 2007). To prevent this from happening, the *Heck* Court erected a wall preventing prisoners from obtaining damages under § 1983 in any action where success would necessarily imply the prisoner's state

---

[2] Although a prisoner who suffers sexual assault may bring a claim for mental or emotional injuries without a prior showing of physical injury, prisoners must first show a physical injury to obtain such damages for other excessive-force claims. *See* 42 U.S.C. § 1997e(e).

22

conviction was invalid. *Heck*, 512 U.S. at 487. If a judgment in favor of a prisoner in a § 1983 case would have this effect, the court must dismiss the complaint unless the prisoner can show that the related state conviction has already been invalidated. *Id.* But when the facts required for a prisoner to prove his § 1983 case do not necessarily logically contradict the essential facts underlying the prisoner's conviction, *Heck* does not bar the § 1983 action from proceeding. *Dyer*, 488 F.3d at 881.

A review of *Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008), demonstrates how these principles work. In *Hadley*, when the defendant officers arrived at a grocery store, they found Hadley running and knocking items from the shelves. *Id.* at 1327. Hadley conceded that when the officers attempted to arrest him, he resisted. *Id.* at 1328. Nevertheless, the officers were able to obtain control of Hadley. *Id.* at 1327. When the officers were removing Hadley from the store, though, Hadley started asking for Jehovah's protection. *Id.* Then, according to Hadley, the officers, while yelling, "Shut up n[*****]," punched Hadley in his stomach and face until he became unconscious. *Id.*

Following this incident, Hadley pled guilty in Florida state court to resisting arrest with violence. *Id.* at 1328. He also filed a § 1983 lawsuit alleging that the officers employed excessive force and conspired to cover up their use of excessive force. *Id.* The officers sought summary judgment, in part on the basis that *Heck* and

Florida collateral estoppel barred Hadley's claims, since in the officers' view, Hadley's guilty plea amounted to an "admission to the lawfulness of the Officers' actions during the arrest." *See id.* at 1331 (cleaned up).

We rejected the officers' argument. *Id.* We explained that Hadley's guilty plea allowed us to assume that Hadley resisted arrest at some point. *Id.* But the plea documents did not indicate whether the officers' conduct that Hadley complained of occurred in relation to Hadley's resistance. *Id.* So we reasoned, "It [was] theoretically possible that Hadley was punched then resisted, or even that he resisted first, but was punched after he stopped resisting." *Id.* And under those circumstances, we observed, *Heck* would not bar Hadley's excessive-force claim, since it would be possible to find that the officers violated the Eighth Amendment *and* that Hadley resisted arrest. *Id.*

We further concluded that Florida collateral estoppel did not preclude Hadley's Eighth Amendment claim, either. *Id.* at 1332. Under Florida collateral estoppel, a party may rely on the factual findings of a criminal case to defend a civil case. *Id.* Significantly, though, a party cannot employ Florida collateral estoppel when the criminal proceeding did not necessarily resolve the civil issue under consideration. *Id.* And in Hadley's case, we noted that Hadley's guilty plea to a general charge of resisting arrest did not necessarily mean that the officers had punched Hadley in response to Hadley's resistance. *Id.* So we concluded that

24

Hadley's guilty plea did not collaterally estop him from claiming that the officers exercised excessive force when they arrested him. *Id.*

The same is true in Sconiers's case—both with respect to the *Heck* bar and collateral estoppel. Sconiers pled guilty to resisting, obstructing, or opposing Lockhart, "who was then and there in the lawful execution of a legal duty . . . , to-wit: clearing the ro[v]er's area, without offering or doing violence to the person of such officer." Crucially, the charging information provides no further facts, and the record similarly fails to identify any facts Sconiers admitted when he entered his guilty plea. So we can look to nothing to illuminate the sequence of events, including who said what when and who hit whom when. As a result, we are left with no way to determine whether Lockhart's use of force was necessarily responsive to Sconiers's non-violent resistance. *See Hadley*, 526 F.3d at 1331. For instance, Sconiers could have "resisted" by standing up when he should not have or failing to sit when instructed to do so. But following that, Sconiers could have been fully compliant with Lockhart's demands. And Lockhart could have nonetheless used unnecessary force on Sconiers at that time. Or Sconiers's failure to heed Lockhart's commands could have occurred after Lockhart engaged in an unwarranted use of force. For these reasons, similar to the facts in *Hadley*, both Lockhart's excessive use of force and Sconiers's resistance are not a logical impossibility.

Lockhart responds that the arrest affidavit irrefutably establishes he used force only in response to Sconiers's cursing at him and defiance of him, even after Lockhart warned him that he would be pepper-sprayed if he continued his intransigence. But the problem for Lockhart is that he has not established the arrest affidavit was incorporated into Sconiers's guilty plea. Indeed, the plea agreement is not even in the record here. Without that, we cannot determine that Sconiers pled guilty to that recitation of events. As a result, *Heck* does not bar Sconiers's excessive-force claim against Lockhart because Lockhart has not established that Sconiers's admitted in his plea that his resistance prompted Lockhart's use of force.

Lockhart's collateral-estoppel arguments fail for the same reason: the information of record concerning Sconiers's guilty plea is too general to establish which on which facts he is estopped. Other than the bare legal conclusions established by the charge and subsequent judgment against him—that he unlawfully resisted Lockhart without violence—it is impossible to glean what Sconiers agreed actually happened. So collateral estoppel does not bar Sconiers from litigating that in this case.

## IV.

For the foregoing reasons, we reverse the district court's grant of summary judgment to Lockhart on Sconiers's Eighth Amendment sexual-assault claim. We also reverse the district court's award of summary judgment to Lockhart on

26

Sconiers's excessive-force claim arising out of the pepper-spraying and takedown. We otherwise affirm the district court's grant of summary judgment to Lockhart and McNeely.

**REVERSED IN PART, AFFIRMED IN PART.**

ROSENBAUM, Circuit Judge, concurring:

I write separately to comment further on why "contemporary standards of decency" do not tolerate corrections officials' sexual abuse of prisoners. By "sexual abuse," I mean coerced sexual contact that is engaged in by a correctional official to humiliate a prisoner, to maliciously and sadistically harm a prisoner, or to sexually gratify a correctional official (or some combination of these reasons). *See Crawford v. Cuomo*, 796 F.3d 252, 254 (2d Cir. 2015).

As we have noted, the Supreme Court has explained that "the Eighth Amendment's prohibition of cruel and unusual punishments draws it meaning from the evolving standards of decency that mark the progress of a maturing society, and so admits of few absolute limitations." *Hudson v. McMillian*, 503 U.S. 1, 8 (cleaned up). As a result, contemporary standards of decency demarcate when a prisoner has satisfied the objective element of an Eighth Amendment claim. *See id.* For this reason, we must measure claims of a correctional officer's sexual abuse of an inmate by contemporary standards of decency to ascertain whether such claims are cognizable under the Eighth Amendment's objective element.

Identifying contemporary standards of decency requires us to review "objective indicia of society's standards, as expressed in legislative enactments and

28

state practice" to see whether they show a "national consensus" against a particular type of behavior. *Miller v. Alabama*, 567 U.S. 460, 482 (2012) (citations and internal quotation marks omitted).

As it turns out, in *Crawford*, 796 F.3d at 259-60, the Second Circuit already did much of the heavy lifting on this inquiry when it conducted a thorough survey of state legislative enactments. Rather than reinventing the wheel, we lean on the Second Circuit's state-law analysis, which we summarize here.

In particular, the Second Circuit noted that, as of 2015, when it issued *Crawford*, state legislatures had nearly uniformly criminalized sexual contact between corrections officers and inmates—the only exceptions at that time being Oklahoma and Delaware, which criminalized only sexual intercourse or penetration, and not sexual contact broadly.[1] *Crawford*, 796 F.3d at 259, 259 nn.5-7. Since then, Delaware has joined the other 48 states in the majority, leaving but a lone state that has not outlawed the type of conduct Sconiers alleges Lockhart engaged in. *See* Del. Code Ann. Tit. 11, § 780B(a) (2018), § 761(g) (2019).

And at a federal level, in 2003, Congress unanimously passed the Prison Rape Elimination Act ("PREA"), now found at 34 U.S.C. §§ 30301, *et. seq.* That statute represents the first piece of federal legislation aimed at the problem of sexual abuse

---

[1] I have, of course, confirmed that each of the states the Second Circuit identified as having criminalized sexual contact between corrections officers and inmates continues to do so today.

of prisoners.[2]  *Crawford*, 796 F.3d at 259.  It seeks to "establish a zero-tolerance standard" for such sexual abuse in prison.  34 U.S.C. § 30302(1).  Upon his administration's finalization of a rule adopting national standards to implement the PREA, President Obama announced, "Sexual violence, against any victim, is an assault on human dignity and an affront to American values."  Presidential Memorandum, May 17, 2012, 77 Fed. Reg. 30873, 30873.

Similarly, the PLRA, as amended in 2013, expressly declines to preclude federal civil actions by prisoners seeking damages "for mental or emotional injury suffered while in custody" if the injury was precipitated by "the commission of a sexual act."  *See* 42 U.S.C. § 1997e(e).  And "sexual act," in turn, includes, among other things, "the penetration, however slight, of the anal . . . opening of another by a . . . finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."  *See id*.; 18 U.S.C. § 2246(2)(C).

These legislative enactments represent "the clearest and most reliable objective evidence of contemporary values."  *Graham v. Florida*, 560 U.S. 48, 62 (2010) (cleaned up).  And they show an unmistakable near-uniform consensus that sexual abuse of prisoners by prison guards, such as the type Sconiers alleges, seriously violates "contemporary standards of decency."  As the Second Circuit has

---

[2] While the PREA addresses the problem of prison "rape," it defines that word to include, among other actions, "the carnal knowledge, . . . sexual assault with an object, or sexual fondling of a person," as relevant here, "forcibly or against that person's will."  34 U.S.C. § 30309(9)(A).

observed, "These laws and policies reflect the deep moral indignation that has replaced what had been society's passive acceptance of the problem of sexual abuse in prison. They make it clear that the sexual abuse of prisoners, once overlooked as a distasteful blight on the prison system, offends our most basic principles of just punishment." *Crawford*, 796 F.3d at 259. For these reasons, a guard's sexual abuse of a prisoner—including the guard's digital penetration of a prisoner's naked anus, with no legitimate penological or medical basis—satisfies the objective element of an Eighth Amendment violation.

*Boxer X v. Harris*, 437 F.3d 1107 (11th Cir. 2006), did not expressly consider contemporary standards of decency. And to the extent that we could generously attribute to *Boxer X* an intent to find that the conduct at issue there did not violate "contemporary standards of decency," since 2006, when we decided *Boxer X*, the changes to the national landscape as it concerns the view of sexual abuse of prisoners have been dramatic. When we issued *Boxer X*, 37 states criminalized sexual contact between correctional officers and prisoners; now every state but Oklahoma does.[3] Similarly, in 2006, the PLRA, without exception, prohibited recovery by a prisoner

---

[3] Statutes of states that have amended their codes to criminalize sexual contact between prisoners and guards, since we decided *Boxer X*, include the following: Alaska Stat. § 11.41.427; Ark. Code Ann. § 5-14-127(a)(2); Del. Code Ann. Tit. 11, § 780B(a) (2018), § 761(g); 720 Ill. Comp. Stat. §§ 5/11-9.2, 5/11-0.1; Ind. Code § 35-44.1-3-10; Kan. Stat. Ann. § 21-5512; Ky. Rev. Stat. Ann. § 510.120(1)(b); Miss. Code. Ann. § 97-3-104; Mo. Rev. Stat. §§ 566.145, 566.010(6); Tenn. Code Ann. § 39-16-408; W. Va. Code §§ 61-8B-2, 61-8B-7; Wyo. Stat. Ann. §§ 6-2-304, 6-2-303(a)(vii).

"for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See* 42 U.S.C. § 1997e(e) (1996). But seven years after *Boxer X* came out, Congress amended the PLRA to remove this limitation when a prisoner can show "the commission of a sexual act." *See* 42 U.S.C. § 1997e(e) (2013). So now, unlike in 2006, a federal cause of action for a correctional officer's sexual abuse of a prisoner is recognized, even in the absence of a physical injury.

For good reason. Groping, fondling, or touching of an inmate's private parts—as well as a whole host of other physical sexual invasions—that do nothing other than to gratify the guard's sexual desires or to dehumanize the victim can leave no lasting external physical traces. But the internal scars of such trauma can produce "significant distress and often lasting . . . harm." *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012). So physical sexual assaults by correctional officers of inmates violate the Eighth Amendment because no matter how difficult the inmate is, the official is never justified in punishing him in this manner. And sexual assault is not part of the penalty we impose for conviction of a crime.

32